974 So.2d 1208 (2008)
Daniel B. GOPMAN, Petitioner,
v.
DEPARTMENT OF EDUCATION, State of Florida, Respondent.
No. 1D07-1189.
District Court of Appeal of Florida, First District.
February 25, 2008.
*1209 Miles J. Gopman, Miami, for Petitioner.
Deborah K. Kearney, General Counsel, and Margaret O'Sullivan Parker, Deputy General Counsel, Tallahassee, for Respondent.
HAWKES, J.
Petitioner challenged two orders of an Administrative Law Judge (ALJ). In the first order, the ALJ expelled Petitioner's counsel from hearings concerning whether Petitioner qualified for a Bright Futures Scholarship, indicating counsel's behavior was so unruly that his expulsion was necessary to preserve the proceeding's decorum. The second order placed the case in abeyance, allowing Petitioner time to obtain new trial counsel. On December 4, 2007, we issued an order denying the petition and required Petitioner to show cause why this Court, on its own motion, should not impose appellate attorney's fees against him pursuant to sections 57.105 and 120.595(6), Florida Statutes (2007). Having received the parties' responses, we find fees should be imposed.
*1210 Pursuant to section 57.105(1), Florida Statutes (2007), attorney's fees may be imposed when
the losing party or the losing party's attorney knew or should have known that a claim or defense when initially presented to the court or at any time before trial: (a) was not supported by the material facts necessary to establish the claim or defense; or (b) would not be supported by the application of then-existing law to those material facts.
Id. The imposition of such fees means a claim was without legal merit when filed, or was later found to be without legal merit. See E. Indus. Inc. v. Fla. Unemployment Appeals Comm'n, 960 So.2d 900, 901 (Fla. 1st DCA 2007). Claims or defenses subject to the imposition of section 57.105 fees are those that a party or his counsel knew or should have known, at the time of filing, were not grounded in fact, or were not warranted by existing law or by reasonable argument for extension, modification, or reversal of existing law. See Dunn v. Kean, 928 So.2d 383, 383 (Fla. 1st DCA 2006); Albritton v. Ferrera, 913 So.2d 5, 9 (Fla. 1st DCA 2005); Visoly v. Sec. Pac. Credit Corp., 768 So.2d 482, 493 (Fla.App. 3d DCA 2000).[1] Significantly, section 57.105, Florida Statutes, does not require a party seeking fees to show the complete absence of a justiciable issue of fact or law, but permits fees to be recovered for any claim or defense that is insufficiently supported. See Wendy's of N.E. Fla., Inc. v. Vandergriff, 865 So.2d 520, 523 (Fla. 1st DCA 2003); Bridgestone/Firestone, Inc. v. Herron, 828 So.2d 414, 418 (Fla. 1st DCA 2002).
Applying these principles to the arguments raised in the petition, we find appellate fees under 57.105 should be awarded here.[2] Although we find all of counsel's arguments lack merit, we will discuss three.
First, Petitioner's counsel argued the ALJ should not have disqualified him as such action was an exercise of judicial contempt power, which ALJs do not possess. Without dispute, an ALJ has the authority to ensure an orderly hearing. Florida Administrative Code Rule 28-106.211 allows an ALJ to "issue any orders necessary to . . . prevent delay, and to promote the just, speedy, and inexpensive determination" of a case. Similarly, section 120.65(9), Florida Statutes, authorizes an ALJ to impose "any reasonable sanction[ ] except contempt for violation of the rules of the division or failure to comply with a reasonable order." Although these provisions would not permit the ALJ to incarcerate counsel, as a contempt citation would allow, they certainly permit an ALJ to disqualify a counsel engaging in unruly, disruptive behavior.
Here, the ALJ never mentioned contempt when he expelled Petitioner's counsel, and the order of expulsion made no *1211 reference to contempt and imposed no fine or punishment. The order was not an exercise of criminal contempt power as it was issued to preserve decorum during the proceeding, not for punishment. See Guardado v. Guardado, 813 So.2d 236, 236 (Fla. 5th DCA 2002) (noting direct criminal contempt orders "provide for punishment rather than coerced compliance with a court order"). Given the foregoing, Petitioner should have known, at the time he filed his petition, that his argument concerning contempt was without legal merit.
Second, counsel claims his disqualification demonstrated how the ALJ conducted the hearings in a manner unduly favorable to Respondent. We find this claim also lacking in legal or factual merit. Three administrative hearings were held regarding Petitioner's entitlement to a Bright Futures Scholarship. The transcript of each hearing reveals the ALJ's extraordinary patience with Petitioner's counsel.
During the first hearing, the ALJ gave Petitioner's counsel wide latitude in his examinations, but found it necessary to warn him six times not to dispute a ruling after it had been made. At the second hearing, the ALJ opened the proceeding by warning Petitioner's counsel the hearing would be terminated if he continued to make unwarranted interruptions. Despite this warning, the ALJ had to admonish Petitioner's counsel on five instances to not interrupt him. Finally, during the third hearing, the ALJ warned Petitioner's counsel on three instances that continued interruptions would result in disqualification. Counsel cannot continuously and purposely disrupt proceedings and then, when sanctioned, raise a claim of partiality.
Third, counsel argues he acted with proper decorum during the hearings and objected merely to preserve the record for this Court's review. An examination of each hearing reveals it was not necessary for counsel to conduct himself in the manner he did to preserve issues for appeal.
For instance, in the first hearing, Petitioner's counsel interrupted the ALJ sixteen times, interrupted witnesses four times, and argued with the ALJ six times regarding rulings. The ALJ warned Petitioner's counsel to not dispute a ruling once it had been given, informed him that further argument would terminate the hearing, and on three instances admonished him to not yell or shout his objections. In response, Petitioner's counsel claimed the ALJ did not understand the issues and he would proceed with his line of inquiry even if the objections to his questions were "overruled."
At the start of the second hearing, the ALJ again warned Petitioner's counsel that continued interruptions would result in his disqualification and the termination of the hearing. This warning was repeated during the course of the hearing. Nevertheless, Petitioner's counsel interrupted the ALJ nine times, interrupted witnesses twice, accused the ALJ of predetermining the case twice, and argued with the ALJ's rulings four times, stating that whether the ALJ found his questions relevant "does not matter."
During the third hearing, over the course of 26 transcript pages, Petitioner's counsel interrupted the ALJ eighteen times, accused Respondent's counsel of asking "phony questions," and claimed the ALJ was "mischaracterizing the law," "railroading [the] case," and lacked "comprehension . . . of the requirements of the State." Such interjections occurred despite the ALJ's repeated warnings that Petitioner's counsel should not interrupt. In particular, the ALJ warned Petitioner's counsel he should "not yell and carry on *1212 like that. It's unprofessional and not proper decorum for this proceeding." The ALJ next warned Petitioner's counsel that if he continued his interruptions, "we will not proceed with you participating in the hearing" and, following further disruption, stated "You're listening or you're leaving." Following a final warning, Petitioner's counsel was disqualified.
Given these examples, counsel's assertion that he behaved properly is unsupported. The repeated insults and interruptions, which occurred despite the ALJ's frequent warnings of disqualification, demonstrate Petitioner's counsel acted in an unprofessional and improper manner. Because attorneys preserve issues for appellate review without resorting to this kind of behavior, counsel knew, or should have known, that raising this issue on appeal was not supported by the facts.
On this Court's own motion, Respondent is awarded appellate attorney's fees to be paid in equal amounts by Petitioner and his attorney pursuant to section 57.105(1), Florida Statutes.[3] The cause is REMANDED to the ALJ to determine the reasonable attorney's fees Respondent incurred.
POLSTON and THOMAS, JJ., concur.
NOTES
[1] An argument for a reasonable extension, modification, or reversal of existing law, requires the party to acknowledge before the trial court that they are seeking such an extension, modification, or reversal of the existing law. To be reasonable, an argument must be made in good faith; to be in good faith, an argument must acknowledge the state of the current law. See Mercury Ins. Co. of Fla. v. Coatney, 910 So.2d 925, 927 (Fla. 1st DCA 2005).
[2] Concerning jurisdiction, although this Court has already denied Petitioner's petition, it may still impose fees pursuant to section 57.105. See Judges of the Eleventh Judicial Circuit v. Janovitz, 635 So.2d 19, 20 (Fla. 1994) (finding when a motion for attorney's fees has been timely filed, the court may award fees within a reasonable time after the mandate is issued). Further, this Court has jurisdiction to award appellate attorney's fees in proceedings challenging agency action. See E. Indus., Inc., 960 So.2d at 901.
[3] Section 57.105 allows an award of fees to be paid solely by the litigant if counsel can show that he "acted in good faith, based on the representations of [the] client as to the existence" of material facts. Unfortunately, section 57.105 does not allow for an award of fees to be paid solely by an attorney when the client acts "in good faith, based on the representations of" the attorney as to the legal sufficiency of claim or defenses. If the law allowed, we would order the fees to be paid solely by counsel.